IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-124-D

JORGE SUAREZ, )
)
              Plaintiff, )
)
v. )    **ORDER**
)
CAMDEN PROPERTY TRUST, )
CAMDEN DEVELOPMENT, INC., )
and CSP COMMUNITY OWNER, LP, )
)
              Defendants. )

On January 24, 2017, Jorge Suarez ("Suarez" or "plaintiff"), on behalf of himself and others similarly situated, filed a complaint in Wake County Superior Court against Camden Property Trust ("Camden Property Trust"), Camden Development, Inc. ("Camden Development"), and CSP Community Owner, LP, f/k/a CSP Community Owner, LLC, d/b/a/ Camden Westwood ("Camden Westwood"; collectively, "defendants"), alleging violations of the Residential Rental Agreements Act ("RRAA"), as amended, N.C. Gen. Stat. § 42-38, et seq., the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-50, et seq., and the Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, et seq. [D.E. 1-4]. Suarez seeks money damages, injunctive relief, and declaratory relief. See id. ¶¶ 143–47.

On March 10, 2017, Camden Property Trust removed the action to this court pursuant to 28 U.S.C. § 1441 [D.E. 1]. On March 21, 2018, defendants moved for summary judgment [D.E. 34], filed a statement of material facts [D.E. 35], and filed a memorandum in support [D.E. 37]. On May 11, 2018, Suarez responded in opposition [D.E. 47]. On June 8, 2018, defendants replied [D.E. 52].

On April 5, 2018, Suarez moved for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure [D.E. 39] and filed a memorandum in support [D.E. 40]. On May 17, 2018, defendants responded in opposition [D.E. 48]. On June 15, 2018, Suarez replied [D.E. 58]. On May 11, 2018, Suarez moved for partial summary judgment [D.E. 43], filed a statement of material facts [D.E. 44], and filed a memorandum in support [D.E. 46]. On June 15, 2018, defendants responded in opposition [D.E. 56]. On July 20, 2018, Suarez replied [D.E. 62]. As explained below, the court grants defendants' motion for summary judgment [D.E. 34], denies plaintiff's motion for partial summary judgment [D.E. 43], and denies as moot plaintiff's motion for class certification [D.E. 39].

I.

Camden Westwood owns an apartment complex, known as Camden Westwood Apartments, in Morrisville, North Carolina. See [D.E. 35] ¶ 1. Camden Development employs the staff at Camden Westwood Apartments. See id. ¶ 2. Camden Property Trust is a real estate investment trust and the owner of Camden Development. See [D.E. 44] ¶ 1; Key Dep. [D.E. 45] 92.

Suarez leased a unit at Camden Westwood Apartments from May 16, 2015, until August 15, 2016. See [D.E. 35] ¶¶ 4–6; Compl., Ex. B [D.E. 1-4] 39–59. Under the lease, Suarez agreed to pay rent by the fifth day of each month. See [D.E. 35] ¶¶ 8–9; [D.E. 44] ¶ 9. If he failed to do so, Suarez agreed to pay defendants' "reasonable attorneys' fees in addition to all other damages," including the eviction fees authorized by the RRAA. Compl., Ex. B [D.E. 1-4] 57; see [D.E. 35] ¶¶ 11–12.

On January 5, 2016, Suarez had not paid his rent. See [D.E. 35] ¶ 13; [D.E. 44] ¶ 25. On January 6, 2016, Camden Development's staff assessed Suarez a late fee of $61.00, equivalent to five percent of his monthly rent, and sent Suarez a late payment notice. See [D.E. 35] ¶¶ 14–15; Compl., Ex. A [D.E. 1-4] 38. The notice stated that, if Suarez failed to pay rent by 11:00 a.m. on the morning of January 15, 2016, defendants would evict him from the premises and assess him

2

"Filing/Attorney Fees." See [D.E. 35] ¶¶ 17–18; see Compl., Ex. A [D.E. 1-4] 38. The notice also stated that, if Suarez did not meet the deadline, Suarez would "be liable for actual damages sustained by the management arising from" his breach of the lease. Compl., Ex. A [D.E. 1-4] 38.

Suarez did not meet this deadline. See [D.E. 35] ¶ 20; Suarez Dep. [D.E. 36] 27–30. On January 15, 2016, defendants filed a summary ejectment complaint in Wake County Superior Court against Suarez, paid $96.00 in court costs, and paid the Wake County Sheriff's Office $30.00 to effect service of process. See [D.E. 35] ¶¶ 22–23; [D.E. 36] 4–5. Suarez alleges that defendants sought only possession of Suarez's apartment, not money damages. See [D.E. 44] ¶ 15; Key Dep. [D.E. 45] 102–03. On the same day, once the 11:00 a.m. deadline to pay rent passed, defendants assessed Suarez a 5% "Settlement Fee" of $61.00 and "Attorney/Eviction Fees" of $191.00. See [D.E. 35] ¶ 24; [D.E. 44] ¶¶ 19, 29. Defendants allege that the "Attorney/Eviction Fees" reflect the total actual charges and fees that Camden Development's attorneys charged Camden Development for filing a summary ejectment action. See [D.E. 35] ¶ 27; [D.E. 36] 8. On January 16, 2016, Suarez paid the outstanding rent and all late fees assessed against him. See [D.E. 35] ¶ 34; [D.E. 44] ¶¶ 34–35. On February 4, 2016, defendants voluntarily dismissed the pending summary ejectment action against Suarez. See [D.E. 35] ¶ 35; [D.E. 36] 9–10. Suarez remained at Camden Westwood Apartments until the conclusion of his lease. See [D.E. 35] ¶ 38.

II.

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87

3

(1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must initially demonstrate an absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Likewise, a "mere ... scintilla of evidence in support of the [nonmoving party's] position [will not suffice]; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, LLC, 630 F.3d 351, 354 (4th Cir. 2011).

Subject-matter jurisdiction is based on diversity of citizenship, and the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). The parties agree that North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id. at 369. If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and

"the practices of other states." Id. (quotation omitted).[1] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted). Moreover, in predicting how the highest court of a state would address an issue, a federal court "should not create or expand [a] [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (first alteration in original) (quotation omitted); Wade v. Danek, Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

Suarez contends that defendants violated the RRAA by charging him $191.00 in court costs and other actual damages arising from his failure to pay rent. See Compl. [D.E. 1-4] ¶¶ 129–35; cf. N.C. Gen. Stat. § 42-46(h)(3). On June 14, 2018, the North Carolina General Assembly ("General Assembly") amended section 42-46(h)(3) of the RRAA. See [D.E. 60] ¶ 4; An Act to Allow Landlords to Recover Out-of-Pocket Expenses in Summary Ejectment Cases, 2018 N.C. Sess. Laws 2018-50 (2018). On June 25, 2018, the amendment became effective. See [D.E. 60] ¶ 4. On July 20, 2018, pursuant to this court's order of June 30, 2018 [D.E. 61], the parties filed memoranda analyzing the amendment's relevance to this case [D.E. 63, 64]. On July 27, 2018, the parties responded in opposition to the other's supplemental memorandum [D.E. 65, 66]. Defendants argue that the amendment is merely a clarifying amendment that "eliminates any ambiguity in the statute" and applies retroactively to this case. [D.E. 63] 1. In opposition, Suarez argues that the amendment "substantially and materially modified" section 42-46 and thereby has only prospective effect under

---

[1] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

5

North Carolina law. [D.E. 64] 2.

"In construing a state law, [federal courts] look to the rules of construction applied by the enacting state's highest court." Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc., 492 F.3d 484, 489 (4th Cir. 2007); see In re DNA Ex Post Facto Issues, 561 F.3d 294, 300 (4th Cir. 2009). Accordingly, this court looks to the rules of statutory interpretation that the Supreme Court of North Carolina applies.

Under North Carolina law, "[t]he cardinal principle of statutory construction is to discern the intent of the legislature." State v. Jones, 359 N.C. 832, 835, 616 S.E.2d 496, 498 (2005); see Friends of Joe Sam Queen v. Ralph Hise for N.C. Senate, 223 N.C. App. 395, 402, 735 S.E.2d 229, 234 (2012). Courts first look to a statute's text to discern legislative intent. See Shaw v. U.S. Airways, Inc., 362 N.C. 457, 460, 665 S.E.2d 449, 451 (2008); State v. Anthony, 351 N.C. 611, 614, 528 S.E.2d 321, 322 (2000). Accordingly, North Carolina courts engaged in statutory interpretation "first look to the plain meaning of the statute." Frye Reg'l Med. Ctr., Inc. v. Hunt, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999). "Where the language of a statute is clear, the courts must give the statute its plain meaning . . . ." Id.

"In construing a statute with reference to an amendment it is presumed that the legislature intended either . . . to change the substance of the original act, or . . . to clarify [its meaning]." Childers v. Parker's, Inc., 274 N.C. 256, 260, 162 S.E.2d 481, 483 (1968); see Spruill v. Lake Phelps Volunteer Fire Dep't, Inc., 351 N.C. 318, 323, 523 S.E.2d 672, 676 (2000). A clarifying amendment does not alter the original meaning of the statute, and thus, applies retroactively to cases pending at the time of enactment. See Ray v. N.C. Dep't of Transp., 366 N.C. 1, 9, 727 S.E.2d 675, 681 (2012); Wilson v. N.C. Dep't of Commerce, 239 N.C. App. 456, 461, 768 S.E.2d 360, 364 (2015); Thornton v. City of Raleigh, 230 N.C. App. 600, 753 S.E.2d 400, 2013 WL 6096919, at *2 (2013)

6

(unpublished table decision). In contrast, an altering amendment modifies a statute's substantive meaning and only applies prospectively. Cf. Ray, 366 N.C. at 9, 727 S.E.2d at 681.

Whether an amendment is altering or clarifying is a question of law for the court. See id., 727 S.E.2d at 681; In re Ernst & Young, LLP, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009). The Supreme Court of North Carolina presumes that an amending legislature intended to change the law. See State ex rel. Utils. Comm'n v. Pub. Serv. Co. of N.C., Inc., 307 N.C. 474, 480, 299 S.E.2d 425, 429 (1983); Childers, 274 N.C. at 260, 126 S.E.2d at 483–84; State v. Moore, 240 N.C. App. 465, 477, 770 S.E.2d 131, 140 (2015). "[A]lthough normally presumed to change existing law, [an amendment] may be interpreted as clarifying [existing law]." Ridge Cmty. Invs., Inc. v. Berry, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977).

A court must undertake a "careful comparison of the original and amended statutes" to "determine whether [an] amendment clarifies [a] prior law or alters it." Ferrell v. Dep't of Transp., 334 N.C. 650, 659, 435 S.E.2d 309, 315 (1993); see Ray, 366 N.C. at 10, 727 S.E.2d at 682. Courts can use amendments to interpret a statute by analyzing "the natural inferences arising out of the legislative history as it continues to evolve." Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 216, 388 S.E.2d 134, 141 (1990). If a statute does not expressly address a particular point, and a legislature enacts an amendment to address that point, the amendment is more likely to be clarifying than altering. See Ray, 366 N.C. at 10, 727 S.E.2d at 682; Ferrell, 344 N.C. at 659, 435 S.E.2d at 315; Jeffries v. Cty. of Harnett, 817 S.E.2d 36, 48 (N.C. Ct. App. 2018); see also Bryant v. United States, 768 F.3d 1378, 1385 (11th Cir. 2014) (applying North Carolina law). On the other hand, "an amendment to an unambiguous statute indicates the intent to change the law." Childers, 274 N.C. at 260, 162 S.E.2d at 484; see Taylor v. Crisp, 286 N.C. 488, 497, 212 S.E.2d 381, 386–87 (1975); Bryant, 768 F.3d at 1385.

7

Before the amendment, the RRAA did not allow a landlord to "put in a lease or claim any fee for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g) of this section, and a reasonable attorney's [sic] fee as allowed by law." N.C. Gen. Stat. § 42-46(h)(3) (2016). Sections 42-46(e), (f), and (g) authorize a landlord, when a tenant breaches a lease, to charge a complaint-filing fee, a court-appearance fee, or a second trial fee depending on how far legal action against the tenant progresses. See id. § 42-46(e)–(g). The amendment to section 42-46(h)(3) explicitly authorizes landlords to charge defaulting tenants "out-of-pocket expenses." See id. § 42-46(h)(3), (i) (2018). Specifically, the RRAA, as amended, unequivocally permits landlords to charge defaulting tenants "filing fees charged by the court," "[c]osts for service of process pursuant to" North Carolina law, and "[r]easonable attorneys' fees actually incurred . . . ." Id. § 42-46(i)(1)–(3).

Before the amendment, section 42-46(h)(3) did not provide express guidance on whether a "fee" included actual court costs and other damages arising from breach of a lease. The amendment to section 42-46 unequivocally authorizes landlords to charge defaulting tenants for such costs. Because the amendment provided express guidance concerning an issue on which the statute was silent, this court predicts that the Supreme Court of North Carolina would interpret the amendment as clarifying. See Ray, 366 N.C. at 10, 727 S.E.2d at 682; Ferrell, 344 N.C. at 659, 435 S.E.2d at 315. Moreover, section 42-46(i) distinguishes the "out-of-pocket expenses" authorized by section 42-46(i) from the "late fees" governed by sections 42-46(a) and 42-46(b) and the "administrative fees" governed by sections 42-46(e)–(g). See N.C. Gen. Stat. § 42-46(i). This distinction suggests that a "fee," before the amendment, did not include actual out-of-pocket expenses. Thus, a comparison of the statute's text before and after amendment indicates that the amendment was clarifying. Furthermore, the General Assembly enacted the amendment in response to a Wake

8

County Superior Court decision that interpreted the term fees, for purposes of section 42-46(h)(3), broadly to include actual court costs and service costs. See Ex. 13 [D.E. 45] 77–78. This legislative response also indicates that the General Assembly's legislative intent was clarifying. See, e.g., Thomas v. Barnhill, 102 N.C. App. 551, 553–54, 403 S.E.2d 102, 103–04 (1991). Thus, both the text and legislative history of the amendment indicate that the General Assembly's legislative intent was to clarify the meaning of the RRAA.

Because the amendment is clarifying, it applies to this action, which was pending when the amendment became effective. See Ray, 366 N.C. at 9, 727 S.E.2d at 681; Wells v. Consol. Judicial Ret. Sys. of N.C., 354 N.C. 313, 318, 553 S.E.2d 877, 880 (2001); Ferrell, 334 N.C. at 661–62, 435 S.E.2d at 317; Childers, 274 N.C. at 260, 162 S.E.2d at 483–84. Accordingly, Suarez's RRAA claim fails as a matter of law because section 42-46(h)(3) at all times permitted defendants to charge Suarez for actual out-of-pocket expenses, such as court costs, arising from his breach.

As for Suarez's contention that defendants charged him attorneys' fees without a statutory basis in violation of the RRAA, the court rejects the argument. "[T]he jurisprudence of North Carolina traditionally has frowned upon contractual obligations for attorney's fees as part of the costs of an action . . . . [A] successful litigant may not recover attorneys' fees . . . unless such a recovery is expressly authorized by statute." Stillwell Enters., Inc. v. Interstate Equip. Co., 300 N.C. 286, 289, 266 S.E.2d 812, 814 (1980). By statute, "[o]bligations to pay attorneys' fees upon any . . . evidence of indebtedness . . . shall be valid and enforceable . . . if such . . . evidence of indebtedness be collected by or through an attorney at law after maturity." N.C. Gen. Stat. § 6-21.2.

The Supreme Court of North Carolina has interpreted the term "evidence of indebtedness" broadly to include any "printed or written instrument . . . which evidences on its face a legally enforceable obligation to pay money." Stillwell Enters., 300 N.C. at 294, 266 S.E.2d at 817; see

9

Southland Amusements & Vending, Inc. v. Rourk, 143 N.C. App. 88, 94–95, 545 S.E.2d 254, 257–58 (2001). Suarez concedes that a lease for an apartment constitutes evidence of indebtedness. See [D.E. 46] 19. Suarez, however, argues that defendants engaged attorneys to file an action for summary ejectment, not for a money judgment, and therefore section 6-21.2 does not authorize attorneys' fees because defendants were not engaged in collecting debt. See [D.E. 46] 19–20.

There is conflicting language in North Carolina case law addressing this issue. See N.C. Indus. Capital, LLC v. Clayton, 185 N.C. App. 356, 368–69, 649 S.E.2d 14, 23–24 (2007) (affirming a denial of attorneys' fees pursuant to N.C. Gen. Stat. § 6-21.2 in a summary ejectment action); Coastal Prod. Credit Ass'n v. Goodson Farms, Inc., 70 N.C. App. 221, 227–28, 319 S.E.2d 650, 655 (1984) (applying section 6-21.2 broadly to all actions "reasonably related" to the collection or enforcement of an instrument of indebtedness). However, summary ejectment actions "enforce" a party's "rights and remedies under the lease." RC Assocs. v. Regency Ventures, Inc., 111 N.C. App. 367, 372, 432 S.E.2d 394, 397 (1993). Moreover, the Supreme Court of North Carolina has held that section 6-21.2 is a remedial statute that courts should construe liberally. See Stillwell Enters., 300 N.C. at 293, 266 S.E.2d at 817; WRI/Raleigh, LP v. Shaikh, 183 N.C. App. 249, 258, 644 S.E.2d 245, 250 (2007). Thus, the court predicts that the Supreme Court of North Carolina would interpret section 6-21.2 to authorize reasonable attorneys' fees where a landlord seeks only summary ejectment and not a money judgment. Defendants had a statutory basis to charge reasonable attorneys' fees and did not violate the RRAA. See N.C. Gen. Stat. § 6-21.2; Stillwell Enters., 300 N.C. at 289, 266 S.E.2d at 814–15. Accordingly, the court grants defendants' motion for summary judgment concerning Suarez's RRAA claim.

B.

As for Suarez's NCDCA claim, Suarez alleges that defendants violated the NCDCA by (1)

threatening to take an action not permitted by law through using Initial Collection Letters, (2) falsely representing the amount of the debt owed, (3) falsely representing that court costs and attorneys' fees could be included in the debt owed, and (4) collecting or attempting to collect debt fees. See Compl. [D.E. 1-4] ¶¶ 115–28.

"The NCDCA prohibits debt collectors from engaging in unfair debt collection practices, including the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations to the consumer, or other unconscionable means." Ross v. FDIC, 625 F.3d 808, 817 (4th Cir. 2010); see N.C. Gen. Stat. §§ 75-50–75-56. An NCDCA claim has three threshold requirements. See Reid v. Ayers, 138 N.C. App. 261, 263, 531 S.E.2d 231, 233 (2000). First, the "obligation owed must be a 'debt;' second, the one owing the obligation must be a 'consumer;' and third, the one trying to collect the obligation must be a 'debt collector.'" Id.; see Glenn v. FNF Servicing, Inc., No. 5:12-CV-703-D, 2013 WL 4095524, at *3 (E.D.N.C. Aug. 13, 2013) (unpublished). If a plaintiff meets these threshold requirements, a plaintiff must then establish the elements of a UDTPA claim: (1) an unfair or deceptive act (2) in or affecting commerce (3) proximately causing injury. See Davis Lake Cmty. Ass'n, Inc. v. Feldmann, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000); Reid, 138 N.C. App. at 266, 531 S.E.2d at 235.

Assuming without deciding that Suarez can meet the three threshold requirements of an NCDCA claim, Suarez's claim fails as a matter of law because Suarez cannot show that defendants committed an unfair or deceptive act. See Davis Lake Cmty. Ass'n, Inc., 138 N.C. App. at 296, 530 S.E.2d at 868; Reid, 138 N.C. App. at 266, 531 S.E.2d at 235. "[W]hether an act or practice is an unfair or deceptive practice . . . is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). Defendants' late payment notice of January 6, 2016, notified Suarez of his obligation to pay rent and of Suarez's increased financial obligations

11

should he fail to cure his non-payment by January 15, 2016. See Compl., Ex. A [D.E. 1-4] 38. The RRAA permitted defendants to charge these costs to Suarez. Defendants' representation was not unfair or deceptive. Likewise, defendants' representation that Suarez was liable for attorneys' fees pursuant to N.C. Gen. Stat. § 6-21.2 also did not constitute an unfair or deceptive act under the UDTPA because defendants could charge Suarez for such fees. Accordingly, the court grants defendants' motion for summary judgment concerning Suarez's NCDCA claim and denies Suarez's motion for partial summary judgment concerning Suarez's NCDCA and RRAA claims.

C.

As for Suarez's UDTPA claim, see Compl. [D.E. 1-4] ¶¶ 136–42, Suarez cannot show that defendants committed an unfair or deceptive act. See Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); Gray, 352 N.C. at 68, 529 S.E.2d at 681; Spartan Leasing Inc. v. Pollard, 101 N.C. App. 450, 460–61, 400 S.E.2d 476, 482 (1991). Thus, Suarez's UDTPA claim fails, and the court grants defendants' motion for summary judgment concerning Suarez's UDTPA claim.

D.

As for Suarez's motion for class certification, the court denies the motion as moot. As discussed, Suarez's claims for violations of the RRAA, the NCDCA, and the UDTPA all fail on the merits.

III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 34], DENIES plaintiff's motion for partial summary judgment [D.E. 43], and DENIES AS MOOT plaintiff's motion for class certification [D.E. 39]. The clerk shall close the case.

SO ORDERED. This 21 day of March 2019.

JAMES C. DEVER III
United States District Judge

13