UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| JORGE SUAREZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:17-cv-00124 |
| v. | ) | |
| | ) | |
| CAMDEN PROPERTY TRUST, | ) | |
| CAMDEN DEVELOPMENT, INC., and | ) | |
| CSP COMMUNITY OWNER, LP f/k/a | ) | |
| CSP COMMUNITY OWNER, LLC, | ) | |
| d/b/a CAMDEN WESTWOOD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO SUBSTITUTE CLASS REPRESENTATIVE AND/OR INTERVENE, AND LEAVE TO FILE AMENDED COMPLAINT

Pursuant to Federal Rules of Civil Procedure 15(a), 23(d), and 24(a) and (b), Proposed Substitute Class Representatives and/or Intervenors Debra Rhino, Kristina Kish, Christopher Knapp, Florencia Hernandez, Bruno Asobo, Heather Mitchell, and Susan Reddick (collectively, "New Class Representatives") respectfully move this Court for an order allowing New Class Representatives to submit an amended complaint substituting them for Plaintiff Jorge Suarez ("Suarez").[1]

Suarez recently filed for protection under Chapter 7 of the Bankruptcy Code. Since Suarez's bankruptcy filing, Defendants Camden Property Trust, Camden Development, Inc., CSP Community Owner, LP f/k/a CSP Community Owner, LLC d/b/a Camden Westwood ("Camden") entered into a proposed settlement with Suarez's bankruptcy Trustee. Because the proposed

---

[1] Counsel for the New Class Representatives requested Camden's position on the motion and understands that Camden does not consent to the motion.

1

settlement between Suarez's bankruptcy trustee and Camden is currently scheduled for review and approval before the Honorable Laurel Isicoff, United States Bankruptcy Judge for the Southern District of Florida on November 9, 2020, and because the proposed settlement could impact the legal rights of New Class Representatives and putative class members they seek to represent, New Class Representatives are simultaneously filing a motion to expedite briefing on the present motion.

## I. <u>STATEMENT OF FACTS</u>

Suarez filed the present action on January 24, 2017, as a putative class action, alleging that N.C. Gen. Stat. § 42-46 (2009) prohibited Camden from the charging, collecting, and threatening to charge three types of eviction-related fees: complaint filing fees, sheriff service fees, and attorneys' fees.[2] The parties treated the case as a putative class action throughout, with Suarez propounding and Camden providing class-wide discovery. Suarez moved for class certification on April 5, 2018, seeking to represent a class of tenants who were sent written correspondence threatening to charge "Filing & Service Fees" and "Attorneys' Fees" (the "Initial Collection Letter Class") and those who were charged and paid "Filing & Service Fees" and "Attorneys' Fees" (the "Fee Class"). D.E. 39. In support, Suarez attached exhibits that were largely documents produced by Camden (and therefore in its possession) in discovery. *See* D.E. 40 at p. 28.[3]

Class certification was fully briefed, but the Court, understandably opting to rule on the merits issue first, resolved summary judgment in favor of Camden and denied class certification

---

[2] The complaint filing fees and sheriff service fees are referred to hereinafter as the "Filing & Service Fees" and the attorneys' fees associated with the filing of an eviction complaint are referred to as the "Attorneys' Fees."

[3] Other exhibits included the text of N.C. Gen. Stat. § 42-46, Camden's supplemental interrogatory responses, publicly available documents, deposition transcripts, and the undersigned's firm resumes.

as moot. D.E. 68. Plaintiff timely appealed the decision to the Fourth Circuit Court of Appeals. D.E. 70. The Fourth Circuit ruled that Camden had legal authority to charge and collect Attorneys' Fees under N.C. Gen. Stat. § 6-21.2, but unlawfully charged and collected the Filing & Service Fees. [COA D.E. 66] The Fourth Circuit remanded the case to this Court for subsequent proceedings consistent with its order. *Id*.

Four days before the Fourth Circuit issued its opinion, Suarez filed for protection under Chapter 7 of the Bankruptcy Code. See **Exhibit 1** (Declaration of Scott C. Harris "Harris Decl." at ¶¶ 7, 8). The parties then engaged in some discussion, prompted by Fourth Circuit Mediator Frank Laney, as to their interest in conducting a mediation, but decided to wait until after the Fourth Circuit's resolution of Camden's petition for rehearing and rehearing en banc. Harris Decl. at ¶¶ 11, 13. After the Fourth Circuit denied Camden's petition, Camden's counsel expressed its desire to mediate the case "while the mandate is stayed." Harris Decl. at ¶ 16.

Camden's counsel and the undersigned counsel agreed to request the Fourth Circuit to stay issuance of the mandate while they mediated with the Fourth Circuit's Mediator's Office and/or a private mediator. Harris Decl. at ¶¶ 17-18 In particular, Camden and the undersigned represented to the Fourth Circuit the following: "***No party seeks a delay to prejudice another***, and each side joins in this request in good faith in hopes of a resolution of the claims can be reached, thereby saving the district court valuable time and resources." Harris Decl. at ¶ 19. (emphasis added). Thereafter, the parties scheduled a private mediation, specifically to resolve a class action, with mediator Robert A. Beason. Harris Decl. at ¶¶ 21, 22. Camden's counsel committed to providing updated information concerning the size of the putative classes as an aid to the parties moving forward with mediation. Harris Decl. at ¶ 23.

While the undersigned attorneys were preparing for the scheduled class mediation, Camden and Suarez's bankruptcy trustee were engaging in covert settlement discussions to resolve Suarez's claims on an individual basis. Harris Decl. at ¶ 24. Despite Camden's attempt to settle Suarez's individual claims with the bankruptcy trustee, Camden's counsel assured the undersigned that Camden still wished to reach a class-wide resolution and to proceed with the scheduled mediation with Mr., Beason. Harris Decl. at ¶ 24. Thereafter, Camden's counsel provided updated class-wide data for two proposed classes. Harris Decl. at ¶ 26. Camden's counsel explained that "[o]ur goal is for both sides to be on the same page when it comes to the underlying facts (numbers)." *Id*.

Based upon conversations between Camden and Suarez's bankruptcy trustee, Camden requested that the mediation be postponed, but not cancelled. Harris Decl. ¶ 27. When asked if the mediation should be outright cancelled, Camden's counsel emphasized Camden's desire to mediate: "We agreed to mediate, and still want to mediate, but only with a party and his attorneys that actually have a claim that can be resolved. Again, we are seeking postponement, not cancellation, of the mediation so this can be sorted out." Harris Decl. at ¶ 28.

Since the sole reason for staying the mandate was to seek a class-wide mediation was no longer applicable, the undersigned requested the Fourth Circuit to terminate the stay and proceed to issue the mandate. Harris Decl. ¶ 31. Upon learning that Suarez's bankruptcy trustee opposed the undersigned's attempt to *lift* the stay but not the motion to impose the stay in the first place (the sole basis of which was to allow for a private mediation that never occurred due to Camden and the bankruptcy trustee), the undersigned withdrew the motion to lift the stay, and then sought leave to intervene on behalf of a subset of the New Class Representatives. Harris Decl. at ¶¶ 32. One day after seeking to intervene on appeal to protect the rights of putative class members,

4

Camden and Suarez's bankruptcy trustee executed a settlement agreement that provided the trustee with $45,000 to dismiss Suarez's claims. Harris Decl. at ¶ 33.

The Fourth Circuit did not rule on the motion to intervene, and instead the stay on the mandate expired by operation of court order. Accordingly, the Fourth Circuit issued the mandate on September 29, 2020. [COA D.E. 93] Within an hour of the mandate being issued, Camden moved to stay this matter "pending approval of the settlement by the U.S. Bankruptcy Court for the Southern District of Florida." D.E. 79. In support of the motion to stay, Camden represented to *this* Court that the action will require dismissal because it will be mooted by the not-yet-approved settlement between Camden and Suarez's bankruptcy trustee. D.E. 79. 80. However, the proposed settlement entered into by Camden and awaiting review by the U.S. Bankruptcy Court for the Southern District of Florida contradicts Camden's statement to this Court because Camden explicitly stated: "This Agreement resolves and determines the Individual Claims. ***Nothing in this agreement resolves or determines the claims of any putative class members***." Harris Decl. at ¶¶ 33, 35 (emphasis added). The U.S. Bankruptcy Court for the Southern District of Florida is scheduled to review the proposed individual settlement on November 9, 2020. Harris Decl. at ¶ 35.

The New Class Representatives lived in an apartment complex owned or managed by Camden during the relevant class period. [See **Exhibits 2-8** Declarations of Debra Rhino, Kristina Kish, Christopher Knapp, Florencia Hernandez, Bruno Asobo, Heather Mitchell, and Susan Reddick (collectively "New Class Representative Decl." at ¶¶ 2-3]; Harris Decl. at ¶ 38. The New Class Representatives received the same or similar letter received by Suarez that formed the basis of the Initial Collection Letter Class. [New Class Representative Decl. at ¶¶ 4-5]. The New Class Representatives where charged and paid Filing & Service Fees during the relevant class period

when an eviction was filed against them. [New Class Representative Decl. at ¶¶ 7-8]. All New Class Representatives desire and commit to protect putative class members' interests and are willing to serve as a named class representative. [New Class Representative Decl. at ¶¶ 11-12].

## II.    LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure governs class actions. Rule 23(d) provides district courts with broad authority to manage class actions: "In conducting an action under this rule, the court may issue orders that...require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in the action..."

Alternative grounds can be found in Rule 24 of the Federal Rules of Civil Procedure, which allows nonparties to intervene in a suit as of right or permissively. Rule 24(a) states that "[o]n timely motion, the court must permit anyone to intervene who...(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Even if nonparties cannot intervene as of right, Rule 24(b) permits intervention on a timely motion so long as the nonparties have "a claim or defense that shares with the main action a common question of law or fact."

Whether substitution under Rule 23(d) or intervention under Rule 23(a) or (b), the next appropriate step is to allow for the complaint to be amended to include the appropriate parties. Under Rule 15(a), a party may amend a pleading on "the court's leave" and "[t]he court should freely give leave when justice so requires."

## III.    ARGUMENT

Due to the current class representative's recent bankruptcy filing and the bankruptcy trustee's proposed individual settlement with Camden, putative class members require a substitute

representative. Contrary to Camden's representation to the United States Bankruptcy Court for the Southern District of Florida, without substitution or intervention of additional class representatives, many putative class members' claims could be jeopardized by the statute of limitations.[4] Thankfully, several suitable representatives have come forward to carry the baton toward class certification and through trial. Therefore, to prevent manifest injustice, this Court should permit the New Class Representatives to substitute as class representatives under Rule 23(d). Alternatively, this Court should allow the New Class Representatives to intervene under Rule 24, either by right or permissively. Under either option, the Court should allow the New Class Representatives to amend the original complaint and relate the action back to the original filing date.

### A.     Substitution of a Class Representative is Liberally Allowed

The leading treatise on class actions supports liberal substitution, especially when the putative class representative's claims are mooted: "When mootness of the named plaintiff's claims occurs, intervention by absentee members is ***freely allowed*** in order to substitute them as class representatives." 1 Newberg on Class Actions § 2:17 (5th ed.) (emphasis added). Indeed, the Manual of Complex Litigation confirms that substitution of a class representative is not only routine and advisable:

> Later replacement of a class representative may become necessary if, for example, the representative's individual claim has been mooted or otherwise significantly altered. Replacement also may be appropriate if a representative has engaged in conduct inconsistent with the interests of the class or is no longer pursuing the litigation. In such circumstances, courts generally allow class counsel time to make reasonable efforts to recruit and identify a new representative who meets the Rule

---

[4] Camden recently filed a motion to stay the present case while the proposed settlement is reviewed by Judge Isicoff in the United States Bankruptcy Court for the Southern District of Florida. D.E. 79, 80. While the New Class Representatives will oppose this motion in due course, it suffices to say that Camden's expressed desire to "extinguish" and "moot" leaves little doubt that putative class members' rights are in peril.

23(a) requirements. The court may permit intervention by a new representative or may simply designate that person as a representative in the order granting class certification. Aside from the need to replace a class representative, formal intervention by class members is infrequent.

Manual for Complex Litigation (Fourth), 21.26.

The Fourth Circuit has repeatedly agreed with the approach adopted in Newberg and the Manual for Complex Litigation. In *Cox v. Babcock & Wilcox Co.*, the district court dismissed individual and class claims after a jury declined to find discrimination against the plaintiff. 471 F.2d 13, 14 (4th Cir. 1972). Despite affirming the dismissal of the individual action, the Fourth Circuit determined that "[t]he class action will accordingly be remanded to the District Court" with instructions that "the class action be retained on the docket for a reasonable time to permit the presentation of any proper claims for future relief under such class action." *Id*. at 16. If no individual came forward to represent the class "within a reasonable time", the Fourth Circuit instructed the district court to "strike the class action from the calendar and enter a final dismissal thereof." *Id*. Notably, the Fourth Circuit declared that this process presented "[n]o substantial prejudice to the defendant..." *Id*.

Six years later, the Fourth Circuit reemphasized its *Cox* decision. In *Goodman v. Schlesinger*, the district court declined to certify a class action under Rule 23(a), and later dismissed the case upon deciding that the plaintiffs were not subject to discrimination. 584 F.2d 1325, 1327 (4th Cir. 1978). The Fourth Circuit affirmed the dismissal of the plaintiffs' individual claims but reversed the denial of class certification because "the district court acted prematurely." *Id*. at 1332. Relevant for the present case, the Fourth Circuit did not determine that the class case was resolved because the putative class representatives' individual claims were denied. Instead, the Fourth Circuit ruled that, similar to *Cox*, the appropriate action was to "remand the class action to the district court with the instructions that it be retained on the docket for a reasonable time to

8

permit a proper plaintiff or plaintiffs, with grievances similar to those of [the putative class representatives] in person, to present himself to prosecute the action as a class representative." *Id*. at 1332-33. Provided that such individuals come forward to participate in the class action as representatives, "the court should then, on the whole record before it, including the record of the trial, decide whether a class action is maintainable and whether the then named plaintiff should represent the class." *Id*. at 1333.

Over thirty years after its decision in *Cox*, the Fourth Circuit again confirmed that the resolution of a putative class representative's claims on individual issues should not prejudice the putative class. In *Anderson v Westinghouse Savannah River Co.*, 406 F.3d 248 (4th Cir. 2005), the Fourth Circuit was once more presented with a putative class representative with dismissed individual claims. As with its decision in *Cox* and *Goodman*, the Fourth Circuit required that the district court on remand give "reasonable time" for a suitable class representative to come forward and represent the class. *Id*. at 275. Notably, the *Cox*, *Goodman*, and *Anderson* decisions all required the district court to allow leave to find replacement putative class representatives pre-certification.

The present case provides a strong basis for substitution. Unlike *Cox*, *Goodman*, or *Anderson*, Suarez's individual claims are not yet mooted, because until Judge Isicoff approves the proposed settlement between Camden and Suarez's bankruptcy trustee, Suarez's claims remain intact. As such, the Court does not need to provide "reasonable time" to find replacement class representatives because the New Class Representatives have already stepped forward. The pendency of the proposed settlement between Camden and Suarez's bankruptcy trustee, however, means that now is the ideal time to allow for substitution.

The New Class Representatives' requested relief should be uncontroversial, as substitution of a class representative is a normal and widely accepted practice in class action litigation. *See*

*Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) ("Substitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons is a ***common and normally an unexceptionable ("routine") feature of class action litigation both in the federal courts***") (emphasis added); *In re Thornburgh*, 869 F.2d 1503, 1509 (D.C. Cir. 1989) ("There is authority to the effect that a court may respond to the pre-certification mooting of a class representative's claims by permitting substitution of a new class representative...Such action is especially appropriate where the events causing mootness have only individual rather than classwide impact."); *Norman v. Connecticut State Bd. of Parole*, 458 F.2d 497, 499 (2d Cir. 1972) (citation omitted) ("Since it is clear that a named plaintiff cannot bring suit for a class of which he is not a part, and no other member of the class has sought to prosecute the action on behalf of its members, we remand the case to the district court with directions to dismiss the action without prejudice on grounds of inadequacy of representation, F.R.Civ.P. 23(a) (4), unless within 30 days another member of the class is granted leave to intervene."); *Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1342 (11th Cir. 2003) ("we find an abuse of discretion and remand for the district court to allow a reasonable period of time for the substitution or intervention of a new class representative.")[5].

There is also widespread agreement among federal circuit courts that, in an analogous situation where a defendant seeks to moot a class action by "picking off" a class representative though an individual settlement, such settlement "pick off" attempts ***do not*** moot the class action. *See Unan v. Lyon*, 853 F.3d 279, 285–86 (6th Cir. 2017) (quotation and citation omitted) ("The 'picking off' exception was developed to prevent defendants from strategically avoiding litigation

---

[5] *See also Wright v. Am. Bankers Life Assur. Co. of Fla.*, 586 F. Supp. 2d 464, 474 (D.S.C. 2008) ("in the class action context, shuffling and substitution of class representatives is not uncommon.")."

by settling or buying off individual named plaintiffs in a way that would be contrary to sound judicial administration."); *Richardson v. Bledsoe*, 829 F.3d 273, 284–86 (3d Cir. 2016) (quotation and citations omitted) ("[T]reating pre-certification settlement offers as mooting the named plaintiffs' claims would have the ***disastrous effect of enabling defendants to essentially opt-out of Rule 23***.") (emphasis added); *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 705–07 (11th Cir. 2014) (recognizing exception to mootness in class actions applies even where plaintiffs' individual claims become moot before plaintiffs move to certify a class); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011) (quotation and citation omitted) ("A rule allowing a class action to become moot simply because the defendant has sought to 'buy off' the individual private claims of the named plaintiffs before the named plaintiffs have a chance to file a motion for class certification would thus contravene Rule 23's core concern: the aggregation of similar, small, but otherwise doomed claims."); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249–50 (10th Cir. 2011) ("we conclude that a nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected offer of judgment for statutory damages and costs made to a named plaintiff does not render the case moot under Article III."); *Comer v. Cisneros*, 37 F.3d 775, 799 (2d Cir. 1994) ("Where the claims of the named plaintiffs become moot prior to class certification, there are several ways in which mootness is not had. First, an intervenor might have stepped in.").

    i.    <u>New Class Representatives Should Be Substituted</u>.

Here, there are ample reasons to permit the New Class Representatives to substitute for Suarez.

*First,* the impetus behind substitution is specific to the current class representative and is wholly unrelated to the merits of the case. *See Robchaud v. Speedy PC Software*, 2013 WL 818503,

at *8 (N.D. Cal. Mar. 5, 2013) ("In class actions, where a named Plaintiff's individual claims fail or become moot for a reason that does not affect the viability of the class claims, courts regularly allow or order the plaintiffs' counsel to substitute a new representative plaintiff.") The existing class representative's individual claims are the subject of a proposed, though not yet approved, settlement. This proposed settlement was negotiated not by Suarez but by the bankruptcy trustee in charge of his estate. The bankruptcy trustee has no authority to negotiate, and does not propose to impact in any way, the class claims involved in this case. *See Dechert v. Cadle Co.*, 333 F.3d 801 (7th Cir. 2003) (stating as a general rule that a bankruptcy trustee cannot serve as a suitable class representative due to conflicts of interest). The resolution of Suarez's individual claims does not affect the viability of class claims.

*Second*, there is no prejudice to Camden in granting the motion. Camden was "put on notice by the filing of the...complaint of the possibility of classwide liability." *Hill v. Western Elec. Co., Inc.* 672 F.2d 381, 386 (4th Cir 1982) (*quoting United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395 (1977); *see also* Harris Decl. at ¶ 6. Camden even committed itself to a class-wide resolution but postponed the previously scheduled mediation for want of "a party and his attorneys that actually have a claim that can be resolved." Harris Decl. at ¶ 28. Allowing the case to move forward through substitution would further judicial economy and efficiency by obviating future battles over any potential mootness that would come from an approval of the settlement by the bankruptcy court as well as whether this Court is bound or ought to be bound by any ruling issued by the United States Bankruptcy Court for the Southern District of Florida.

Camden is not prejudiced by any minimal discovery that may be required by substituting class representatives. The Fourth Circuit's resolution of the substantive merits issues has narrowed the scope of disputes, leaving any remaining discovery uncomplicated. *See Wright v. Am. Bankers*

12

*Life Assur. Co. of Fla.*, 586 F. Supp. 2d 464, 473 (D.S.C. 2008) ("Defendant claims that it would be prejudiced by having to defend against these new allegations, but the court finds that any additional discovery or trial preparation that would be required of Defendant would be minimal...Since Barker was a class member, Defendant had already identified and produced information relating to Barker's policy. Given this, it would seem to require minimal diligence for Defendant...Any further relevant information sought by Defendant would seem to be easily ascertainable by no more than a few relatively simple depositions."). The New Class Representatives are members of the same two classes Suarez sought to represent and share similar facts. [See generally New Class Representative Decl.]. Camden already produced documents pertaining to the New Class Representatives, has additional relevant documents as to the New Class Representatives' tenancies as part of their business files, and any concern about their adequacy can be addressed through limited discovery. *See In re Intuniv Antitrust Litig.*, No. 1:16-CV-12653-ADB, 2020 WL 4274507, at *9 (D. Mass. July 24, 2020) (recognizing proposed substituted class representatives made "a prima facie showing that it will adequately represent" the class but allowed "limited discovery into" its adequacy).

Camden is not prejudiced because its own voluntary actions brought about the need for replacement class representatives. Camden's settlement with Suarez' bankruptcy trustee prompted the need to substitute class representatives in the first place, and Camden can hardly complain of a result entirely of its own doing. *See Brooks v. Ward*,97 F.R.D. 529, 532 (W.D.N.C. 1983) (finding no prejudice to substituting a new class representative because the "*mootness was created by the act of the defendants*") (emphasis in the original). Even more, Camden cannot assert prejudice when it affirmatively represented in the proposed settlement with Suarez's bankruptcy trustee that the settlement only concerns Suarez's "individual claims" and that "[n]othing in this

13

Agreement resolves or determines the claims of any putative class members." [Harris Decl. Exhibit H ¶1(c)] By asserting that no putative class members' claims are impacted, Camden essentially waived any claim to prejudice. Even more, the New Class Representatives timely filed the present motion, as Suarez filed for Chapter 7 while his case was pending on appeal and the mandate was issued only days prior to the filing of the instant motion.

*Third,* the risks of not permitting substitution are real and substantial. Camden proposes to pay a seemingly inflated amount to Suarez's bankruptcy trustee, $45,000[6], to purportedly to resolve his individual claims. But Camden's rush to request a stay and expressed desire to "moot" and "extinguish" the present case, coupled with its lavish individual proposed settlement, all make clear Camden's true intentions: <u>to eviscerate class claims</u>. If the bankruptcy court approves the proposed settlement, any dismissal of the present case could have repercussions for putative classes. For example, Camden could argue that large swaths of the putative classes should be removed on statute of limitations grounds. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018) (declining to extend American Pipe equitable tolling of statute of limitations to successive class actions).[7] Such a result, when substitution is regularly and freely granted, is legally suspect. *See Schultz v. Midland Credit Mgmt., Inc.*, No. CV 16-4415 (JLL), 2019 WL 2083302, at *10 (D.N.J. May 13, 2019) ("The Court finds that *China Agritech* does not prohibit *American Pipe*

---

[6] In contrast, Suarez's North Carolina Debt Collection claims carry a statutory penalty ranging from $500 to $4,000. *See* N.C. Gen. Stat. § 75-56(b).

[7] The New Class Representatives do not concede that all successive class actions are, as a rule, barred by *China Agritech*; however, courts are in dispute over the impact of tolling and the Fourth Circuit has not yet ruled on the issue. *Compare In re Celexa*, 915 F.3d 1 (1st Cir. 2019) (declining to adopt a narrow reading of *China Agritech* focused on whether a substantive class certification ruling was issued) with *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 295 F.3d 380, 389 (3d Cir. 2002) ("we hold that the class claims of intervening class members are tolled if a district court declines to certify a class for reasons unrelated to the appropriateness of the substantive claims for certification.").

tolling from applying in these circumstances to allow the addition or substitution of a named plaintiff in an ongoing putative class action following the expiration of the statute of limitations but prior to a decision on class certification. . . .Therefore, the distinction that this Court draws between successive class actions and amendments to ongoing actions that have not yet reached class certification still holds."). Given the willingness and availability of replacement plaintiffs to carry the baton from Suarez, justice counsels in favor of substitution.

*Fourth*, even if putative class members are not automatically barred by the statute of limitations, dismissing the case without allowing substitution will have the practical effect of terminating the ability of nearly all putative class members to recover damages for Camden's collection of undisputedly illegal fees. It is unlikely that more than a handful are even aware that Camden has collected illegal Filing & Service Fees years ago. Even those tenants that are somehow made aware of their rights, are unlikely to secure counsel over a $96 Filing Fee and $30 Service Fee[8], even with the statutory damages afforded by the NCDCA. For example, New Class Representatives Susan Reddick and Debra were each assessed and paid the illegal fees on only a single occasion. [Reddick and Rhino Decs. at ¶ 9] The vast majority of putative class members will <u>never</u> file a case on their own because they are either ignorant of their rights, intimidated by the legal system, unable to locate and secure counsel to represent them, or are barred by the economics of litigation. As Judge Richard Posner succinctly put it "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits. . ." *Amchem Prods. v.*

---

[8] What may seem small to many may be significant to those whose incomes are at or below the poverty level. A check for $100 represents one percent of the total annual poverty guideline allotment for one person under the United States Department of Health and Human Services 2005 Poverty guidelines. 70 Fed. Reg. 8373, 8374 (Feb. 18, 2005). For a low-income tenant, the seemingly trivial amount of a $100 individual recovery is equivalent, as a percentage of income, to a $1,000 recovery by a single person earning 100,000 a year.

*Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689, 709 (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997). Without the legal restraint imposed by this class action lawsuit, tenants will, in reality, never recover the money that was unlawfully taken by Camden.

### B.    Liberal Intervention is Encouraged

Alternatively, this Court should allow the New Class Representatives to intervene under Rule 24. Rule 24(a) states that a court "must permit anyone to intervene who...(2) claims an interest in the transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." From its inception, Rule 24(a) was meant precisely for situations where putative class members' interests are not being represented. *See* Fed. R. Civ. P. 24, advisory committee's note (1966) ("The general purpose of original Rule 24(a)(2) was to entitle an absentee, purportedly represented by a party, to intervene in the action if he could establish with fair probability that the representation was inadequate... ***similarly a member of a class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court***.") (emphasis added).

"Trial courts are directed to construe Rule 24 liberally to allow intervention, where appropriate." *Carcano v. McCrory*, 315 F.R.D. 176, 178 (M.D.N.C. 2016). "The Fourth Circuit has long held that 'liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Students for Fair Admissions, Inc. v. Univ. of N. Carolina*, 319 F.R.D. 490, 493 (M.D.N.C. 2017) (quoting *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986)). Under these liberal standards the New Class Representatives motion to intervene should be granted.

16

### i.    Mandatory Intervention Under Rule 24(a) is Warranted

The New Class Representatives are entitled to intervene in this action as of right. Rule 24(a) provides that a court "must permit" anyone to intervene who files a timely motion and meets enumerated criteria. The New Class Representatives meet all four criteria set out in Rule 24(a)(2): (1) the motion to intervene is timely; (2) the proposed intervenors have an interest in the subject matter of the litigation; (3) denial of the motion would impair or impede their ability to protect their interests; and (4) their interests are not adequately represented by the existing party. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999).

#### a.    *The Motion to Intervene is Timely*

*First*, the New Class Representatives' motion is timely. The purpose of the timeliness requirement "is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001), *rev'd on other grounds sub nom. Devlin v. Scardelletti*, 536 U.S. 1 (2002) (internal quotation marks omitted). To determine timeliness, the court assesses three factors: (1) how far the suit has progressed; (2) the prejudice that the delay in seeking intervention may cause the parties; and (3) the reason for any tardiness in seeking intervention. *Id*. at 203. The "mere passage of time is but one factor to be considered in light of all the circumstances." *Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980). "In a class action the critical issue with respect to timeliness is whether the proposed intervenor moved to intervene 'as soon as it became clear ... that the interests of the unnamed class members would no longer be protected by the named class representatives.'" *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982) (*quoting United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)).

Here, granting the New Class Representatives' motion will ensure that this lawsuit will move closer to reaching its "terminal" rather than being derailed. Suarez filed for bankruptcy protection four days before the Fourth Circuit issued its opinion. Upon representation from Camden's counsel, the undersigned agreed to stay issuance of the mandate to allow for private mediation or a mediation through the Fourth Circuit's Mediator Office. Harris Decl. ¶¶ 15-23. When it became clear that Camden and Suarez's bankruptcy trustee were attempting to settle Suarez's individual claims, intervention was sought in the Fourth Circuit to lift the stay on issuance the mandate with the expressed intent to substitute or intervene in the present action. *Id*. ¶ 31. In line with *United Airlines* and *Hill*, the New Class Representatives seek to intervene as soon as it became clear that the interests of putative class members would no longer be protected by Suarez.

Further, any delay in seeking intervention does not prejudice Camden. Prejudice is "measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Students for Fair Admissions, Inc. v. Univ. of N. Carolina*, 319 F.R.D. 490,494 (M.D.N.C. 2018) (quoting *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986)). However, in a class action where the defendant is put on notice of the types of claims that could be raised by class members, there can be no finding of prejudice. *See Hill*, 672 F.2d at 386, quoting *United Airlines*, 432 U.S. at 395 ("Western clearly could claim no prejudice from the delay itself because, like the employer in [*United Airlines, Inc. v.*] *McDonald*, it was 'put on notice by the filing of the ... complaint of the possibility of classwide liability, and there is no reason why ... pursuit of that claim should not be considered timely under the circumstances.'"); *see also Students for Fair Admissions*, 319 F.R.D. at 496 ("even if intervention by New Class Representatives may potentially add some degree of complication to the discovery process, this

18

Court believes that such inconvenience is a small price to pay when issues of this magnitude are before the Court.")

Here, there is little to no prejudice to Camden. As stated *supra*, Camden knew from the outset that it was subject to claims from tenants on a classwide basis. Camden's decision to utilize the time afforded by the stay of the issuance of the mandate to negotiate with Suarez's bankruptcy trustee rather than its original purpose – negotiating a class-wide resolution – only invited intervention by the New Class Representatives. Indeed, Camden's counsel also represented that Camden wanted to resolve this matter on a class wide basis on numerous occasions "with a party and his attorneys that actually have a claim that can be resolved." Harris Decl. ¶¶ 24-28. Unlike the proposed intervenors in *Etters v. Bennett*, 2011 WL 3320489, Case No. 5:09-CT-3189, at *3 (E.D.N.C. Aug. 1, 2011), the New Class Representatives do not seek to name any additional defendant. While it is anticipated that some amount of discovery will need to occur upon any intervention, the minimal amount of discovery required counsels against a finding of prejudice and in favor of intervention. *See Wright, supra* (finding no prejudice when minimal discovery was needed on intervening class member). Extensive discovery will not be needed from Camden, and Camden does not reasonably need extensive discovery from the New Class Representatives; indeed, much if not all of the relevant information is already in Camden's possession. In sum, each timeliness consideration supports intervention.

      b.   *The Intervenors Have Substantial Interests in the Subject Matter of the Litigation*

*Second*, New Class Representatives have a strong interest in the subject matter of this lawsuit. To meet the second criteria for intervention under Rule 24(a)(2), a would-be intervenor must show a "significantly protectable interest." *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (internal quotation marks omitted). The Supreme Court conclusively determined that the

protection of unnamed class members' rights is a protectable interest. *United Airlines*, 432 U.S. at 394 ("as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene ***to protect those interests***.") (emphasis added). The New Class Representatives are members of the same putative classes that Suarez sought to represent in his class certification motion. The New Class Representatives have undertaken an obligation to represent that putative classes, and that obligation stands to be threatened (as well as their choice of this forum and the benefit of the Fourth Circuit's ruling) if they are not permitted to intervene. Therefore, the New Class Representatives have a strong interest in the litigation.

        c.  *The Intervenors May Be Unable to Protect Their Interests if Their Motion is Denied*

*Third*, the New Class Representatives seek to intervene to protect their interests and those of the putative classes to protect their interests. "If [a potential intervenor] would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene..." Advisory Committee Notes, Fed. R. Civ. P. 24. Camden has already signaled that they will attempt to argue, against controlling law, that the claims of putative class members will be mooted by its proposed settlement with Suarez's bankruptcy trustee. *See* D.E. 79, 80. There can be no doubt that determinations in this action will impact the relief the New Class Representatives seek. For example, Camden will undoubtedly argue that the statute of limitations has not been tolled during the pendency of this litigation. If Camden succeeds with this argument, claims of <u>every</u> New Class Representative will be extinguished as the violations occurred prior to

four years ago.[9] [*See* New Class Representative Decl. ¶ 9 (upon information and belief, more than four (4) years have elapsed for every violation of the NCDCA with the exception of a single violation against Christopher Knapp in or around January of 2017.)] This criterion is therefore satisfied.

### d. *Suarez Cannot Protect the New Class Representatives' Interests*

*Fourth*, the existing representation is inadequate. Upon the filing of his Chapter 7 bankruptcy, Suarez's bankruptcy trustee ceased Suarez's concern for the putative classes and instead obtained a proposed individual settlement with Camden. Because the bankruptcy trustee's primary focus is to collect funds for Suarez's creditors, including Camden, the interests of the New Class Representatives and the putative class members they seek to represent are unrepresented. *See Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976) (noting that the "burden of showing an inadequacy of representation is minimal.")

For these reasons, intervention as of right under Rule 24(a)(2) is proper.

### ii. Alternatively, The New Class Representatives Should be Permitted to Intervene Under Rule 24(b).

Rule 24(b)(1)(B) allows a court to permit anyone to intervene who files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising discretion under Rule 24(b), the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Fourth Circuit instructs that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is

---

[9] The statute of limitations for an unfair and deceptive trade practice claim in North Carolina is four (4) years. *See* N.C. Gen. Stat. § 75-16.2; *see also Trantham v. Michael L. Martin, Inc*., 745 S.E.2d 327, 334 (N.C. App. 2013) (citing same).

compatible with efficiency and due process." *Feller v. Brock*, 802 F,2d 722, 729 (4th Cir. 1986). All factors counsel in favor of allowing the New Class Representatives to permissively intervene.

*First*, the test for timeliness is the same under Rule 24(b) as Rule 24(a)(2). *Scardelletti*, 265 F.3d at 202-03. For the reasons explained above, the New Class Representatives' motion was timely.

*Second*, the New Class Representatives share common questions of fact and law with the Suarez action. The common questions of fact involve the charging of Filing & Service Fees in connection with an eviction action, as well as the threatening to charge these fees in written correspondence. Each of the New Class Representatives were threatened with, charged, and paid Filing & Service Fees, which are the same core set of facts raised by Suarez. Further, the New Class Representatives will assert the same causes of action based on the same theory raised in Suarez. Therefore, this criteria is satisfied.

*Third*, the New Class Representatives' intervention will not cause undue delay or prejudice.[10] Notably, "Rule 24(b) mentions only *undue* delay; normal delay does not require denying intervention." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 323 F.R.D. 553, 561 (E.D. Va. 2018) (emphasis in original). As explained above, any delay is the direct result of Camden's own actions; Camden surely cannot complain of the minimal time required by intervening replacement class representatives necessitated by Camden's own actions. The Fourth Circuit remanded this action having largely, if not completely, decided the merits issues in the case, with class certification and damages as the only substantive issues left to be determined. As such, intervention will not require much in the way of merits adjudication. Further, by representing that "[n]othing

---

[10] The lack of prejudice to Camden is discussed *supra*.

in this Agreement resolves or determines the claims of any putative class members" [bankruptcy settlement agreement, ¶1(c)], Camden essentially waived any right to oppose intervention.

Finally, the Court may also consider whether permissive intervention "will contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Students for Fair Admission*, 319 F.R.D. at 496 (internal quotation marks omitted). Simply put, any opposition to intervention will not allow for the full development facts or any adjudication of legal issues involved in this case. Instead, the only option that non-intervention presents will result in large swaths of the class members' claims being cut off and a judicially inefficient restart of the case from square one. Non-intervention hampers the development of factual issues and eschews adjudication of legal issues.

For these reasons, the New Class Representatives should be permitted to intervene under Rule 24(b).

### C. Good Cause Exists to Amend the Complaint Under Rule 15

Whether the Court allows for substitution of the New Class Representatives under Rule 23(d), or to intervene in the action under Rule 24(a) or (b), good cause exists to amend the operative complaint under Rule 15(a)(2) to name individuals who will actually carry forward the action and to account for the Fourth Circuit's ruling.

Rule 15(a)(2) allows a party to amend the complaint with "the court's leave." The guiding principle is simple and stated in the rule itself : "The court should freely give leave when justice so requires. The Fourth Circuit recognizes that "[t]his liberal rule gives effect to the federal policy ***in favor of resolving cases on their merits*** instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (emphasis added).

There are generally three reasons to deny a motion under Rule 15(a)(2): "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber*, 438 F.3d at 426 (*quoting Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.1986)). Delay, for example, is an insufficient basis to deny a motion to amend, even up through a judgment. *Id.* at 427.[11]

The New Class Representatives present a simple and good faith basis to amend the complaint. Suarez's Chapter 7 filing, Camden's pick-off settlement attempt, and the Fourth Circuit's ruling illustrate that the current complaint and class representative must be amended to reflect the current reality. *First*, for reasons explained *supra*, an amended complaint does not prejudice Camden in any legally cognizable way. *Second*, the New Class Representatives seek to amend the complaint in good faith to ensure the case gets resolved on its merits and avoids needless judicial inefficiency. *Third*, an amendment would not be futile, as the Fourth Circuit has confirmed that the basic claims at issue the case have merit. Instead, the amendment would be effective because, as the proposed amended complaint maintains the same causes of action, legal theories as the original complaint, and defendants,[12] it would relate back to the filing of the original complaint either by operation of Rule 15(c). *See also Sosana v. Iowa*, 419 U.S. 393, 402 n. 11 (1975) ("There may be cases in which the controversy involving the named plaintiffs is such that

---

[11] While the New Class Representatives had no reason to doubt the original class representative's ability to protection the class up until his bankruptcy filing, the New Class Representatives were completely within their rights to remain as absent class members during the pendency of the suit. *See  In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 615 (7th Cir. 2020) ("we reject Allstate's argument that Providence ERS somehow waived its ability to act as a class representative in this case by relying for a time on the original lead plaintiff to pursue the case.")

[12] The proposed Amended Complaint dismisses CSP Community Owner, LP f/k/a CSP Community Owner, LLC d/b/a Camden Westwood, the actual "owner" of the Camden Westwood Apartments, because Camden Development, Inc. is solely responsible for providing all property management services to each Camden property. *See e.g.,* Plaintiff's Memo. in Support of Class Certification, D.E. 40, p. 5-6.

24

it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review."); *McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380, 389 (3d Cir. 2002) ("In keeping with Supreme Court precedent and our own, we hold that the class claims of intervening class members are tolled if a district court declines to certify a class for reasons unrelated to the appropriateness of the substantive claims for certification.").

## IV.  <u>CONCLUSION</u>

The New Class Representatives seek to become class representatives in the present action. This relief is not only uncontroversial and widely permitted, but this relief is required as a direct result of Camden's actions. Granting the requested relief will not result in Camden forsaking any defenses to class certification or at trial; instead, it will simply allow putative class members' rights to be protected.

For these and the foregoing reason, the New Class Representatives respectfully request the Court grant their motion.

Dated:  October 2, 2020.

**WHITFIELD BRYSON LLP**

*/s/ Scott C. Harris*
Scott C. Harris
N.C. Bar No.: 35328
Patrick M. Wallace
N.C Bar No.: 48138
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
scott@whitfieldbryson.com
pat@whitfieldbryson.com

25

MAGINNIS LAW, PLLC
Edward H. Maginnis
N.C. State Bar No. 39317
Karl S. Gwaltney
N.C. State Bar No. 45118
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnislaw.com
kgwaltney@maginnislaw.com
*Attorneys for proposed substitute class representatives and/or intervenors*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 2nd day of October, 2020.

WHITFIELD BRYSON LLP

*/s/ Scott C. Harris*
Scott C. Harris
Patrick M. Wallace
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
scott@whitfieldbryson.com
pat@whitfieldbryson.com

*Attorneys for proposed substitute class representatives and/or intervenors*